UNITED STATES, Appellee

v.

Adam D. DOUGLAS, Senior Airman
U.S. Air Force, Appellant

No. 09-0466

Crim. App. No. S31059

United States Court of Appeals for the Armed Forces

Argued October 14, 2009

Decided February 23, 2010

RYAN, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, J., joined. BAKER and STUCKY, JJ., each filed a separate dissenting opinion.


Counsel

For Appellant: Terri R. Zimmermann, Esq. (argued); Captain Marla J. Gillman (on brief); Major Lance J. Wood and Major Shannon A. Bennett.

For Appellee: Major Coretta E. Gray (argued); Colonel Douglas P. Cordova, Lieutenant Colonel Jeremy S. Weber, and Gerald R. Bruce, Esq. (on brief).


Military Judge: Nancy J. Paul


__THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.__

Judge RYAN delivered the opinion of the Court.

In this case the military judge found unlawful command influence and then crafted a remedy in which Appellant not only appeared to acquiesce but actively participated. The military judge also gave Appellant a continuance to avail himself of the remedy and then inquired as to whether Appellant wished to raise any further issues on the matter. Appellant raised none. Appellant now alleges that the military judge reversibly erred by crafting a remedy for unlawful command influence instead of dismissing the charges against him.[1] We disagree, and hold that the military judge's decision to craft a remedy was within the bounds of her discretion.

If the record disclosed that the reasonable remedy had been implemented in full, Appellant's participation in and apparent acquiescence at trial to the remedy crafted and Appellant's disavowal of any claim of ineffective assistance of counsel would end the inquiry. However, because the record does not disclose whether the remedy crafted by the military judge was actually implemented in full, under the facts of this case we devolve to the ordinary test whether unlawful command influence

---

[1] On Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE REVERSIBLY ERRED WHEN SHE DID NOT DISMISS THE CHARGES AND SPECIFICATIONS AFTER SHE FOUND THAT UNLAWFUL COMMAND INFLUENCE EXISTED IN THIS CASE.

deprived Appellant of access to character witnesses.  United States v. Gleason, 43 M.J. 69, 73 (C.A.A.F. 1995) (explaining the government's burden to establish beyond a reasonable doubt that defense access to witnesses was not impeded by unlawful command influence).  We are not convinced beyond a reasonable doubt that Appellant was not thus prejudiced.  United States v. Biagase, 50 M.J. 143, 151 (C.A.A.F. 1999) (finding beyond a reasonable doubt the correct quantum of proof applicable to issues of unlawful command influence).  Accordingly, we overturn the United States Air Force Court of Criminal Appeals.

## I.  Facts

A special court-martial composed of a military judge sitting alone convicted Appellant, contrary to his pleas, of failing to go to his appointed place of duty at the time prescribed, violating a lawful general regulation, dereliction of duty, making a false official statement, distribution of methamphetamine, carnal knowledge, and sodomy of a child under the age of sixteen years, in violation of Articles 86, 92, 107, 112a, 120, and 125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 892, 907, 912a, 920, 925 (2000), respectively.

The sentence adjudged by the military judge and approved by the convening authority included a bad-conduct discharge, confinement for twelve months, and reduction to the grade of E-1.  Appellant was given sixty days of confinement credit to

compensate for illegal pretrial punishment. The CCA found no prejudicial error and affirmed. United States v. Douglas, No. ACM S31059, 2009 CCA LEXIS 41, at *32, 2009 WL 289705, at *11 (A.F. Ct. Crim. App. Jan. 28, 2008) (unpublished).

The charges at issue in this appeal stem from Appellant's conduct when he was stationed as a military recruiter in Butte, Montana. Appellant, at the time a senior airman (SrA), was supervised by Master Sergeant (MSgt) William Bialcak, the senior recruiter at the Butte recruiting office. In December 2003, an investigation into Appellant's alleged misconduct began. MSgt Bialcak heard of the investigation and, on May 6, 2004, ordered Appellant not to contact any witness who was part of the ongoing investigation into his alleged misconduct. MSgt Bialcak issued a second order on May 11, 2004, prohibiting Appellant from contacting any members of his unit for non-work-related reasons without MSgt Bialcak's prior approval. While the investigation was ongoing, MSgt Bialcak openly disparaged Appellant, expressed his certainty of Appellant's guilt to co-workers within the recruiting station and surrounding federal building, and intimidated potential witnesses from providing character references for Appellant. MSgt Bialcak also intimidated Appellant into not filing a report with the Inspector General regarding these actions.

4

On August 16, 2005, Appellant moved to dismiss the charges and specifications against him on the ground that MSgt Bialcak's orders and actions constituted unlawful command influence by creating a hostile environment that made it unlikely that Appellant's colleagues would speak on his behalf.[2]  On August 18, 2005, the motion to dismiss was heard during an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2000), session.  After reviewing the evidence presented, the military judge examined the effect of MSgt Bialcak's two May 2004 no-contact orders and found that although "there was no direct evidence the Accused was hindered in presenting a defense or that the outcome of his court-martial [was] affected by these orders," MSgt Bialcak's orders had the potential to impact Appellant's "ability to collect character statements on his behalf" from his co-workers.  The military

---

[2] The prohibition against unlawful command influence arises from Article 37(a), UCMJ, 10 U.S.C. § 837(a) (2006), which provides in relevant part:

> No authority convening a general, special, or summary court-martial, nor any other commanding officer, may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercise of its or his functions in the conduct of the proceeding.  No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts.

judge next examined the effect on the court-martial of MSgt Bialcak's "negative attitude and unpleasant demeanor toward the Accused." She found that MSgt Bialcak's behavior resulted in "a hostile atmosphere" within both the recruiting office and the federal office building in which it was housed. She identified three co-workers who had been affected by MSgt Bialcak's behavior:

> Mrs. Tomlinson [one of MSgt Bialcak's subordinates] testified that she did not submit a statement on the Accused's behalf, which would have been favorable if she had done so, because she was afraid that MSgt Bialcak would be angry with her . . . . There was testimony that SSgt Austin [another of MSgt Bialcak's subordinates] . . . was apprehensive about providing a character statement on his behalf. Don Rose [who maintained the federal building where MSgt Bialcak and SrA Douglas worked] also testified that he felt that there would be negative consequences should he provide a character statement. These witnesses testified that they, and others they knew of, were discouraged from providing character statements for the Accused because of possible repercussions from MSgt Bialcak.

Based on these findings of fact, the military judge concluded that MSgt Bialcak's actions resulted in unlawful command influence by discouraging witnesses from providing character statements on Appellant's behalf. However, the military judge concluded that although the evidence showed unlawful command influence that could affect Appellant's sentence, "the evidence was not sufficient to show that this unlawful command influence would potentially affect the findings of the Accused's court-martial." (emphasis added). The motion

to dismiss was denied and a remedy was crafted to overcome the effects of the unlawful command influence.

The remedy consisted of several parts. The military judge ordered a continuance so that trial and defense counsel would have the opportunity to, among other things, jointly author a memorandum directed at potential character witnesses. The memorandum, which was to be written in the name of Appellant's commanding officer, was to be "utilized by defense counsel and the [a]ccused to facilitate the securing of character statements on behalf of the [a]ccused." The continuance was to last for a period of time to "be determined by the Court, subsequent to the finalization and approval of the memorandum." Further, the military judge made several "strong recommendation[s]" designed to remove Appellant from MSgt Bialcak's supervision, prevent MSgt Bialcak from discussing the case with anyone except trial and defense counsel, and rescind MSgt Bialcak's previously issued no-contact orders.

She then provided counsel with an opportunity to question or state an objection regarding the memorandum, told counsel that she was continuing the court-martial until counsel were ready to proceed, and gave both parties another opportunity to express any concern regarding the production of witnesses or identify other unresolved issues.

The continuance lasted over seventy days, and hearings on the merits began on November 1, 2005. At that time, the military judge questioned defense counsel regarding the memorandum that had been, as ordered, jointly authored by defense and trial counsel in the name of Appellant's commander and then reviewed by the military judge:[3]

> MJ: And another area that we need to take up is when the court recessed in August, in response to the court's ruling regard [sic] the defense motion to dismiss, I requested counsel prepare a memorandum to be signed by Lieutenant Colonel Young, who was the accused's commander. I requested that they forward that to me. They did so. Some modifications were done back and forth between all parties, and we did come up with a final memorandum. What I will do, the -- that memorandum was provided to all counsel.
>
> And I should ask [defense counsel] Captain Williams, did the defense receive a copy of that memorandum for their use?
>
> DC: We did, Your Honor.

Defense counsel raised no objection as to the effectiveness of the memorandum. When the military judge provided counsel the

---

[3] The memorandum was addressed to all persons who knew Appellant, either personally or professionally, in the name of Appellant's commander. The memorandum stated, in relevant part:

> I can assure you that no negative actions will be initiated by anyone should they elect to assist in SrA Douglas' defense. Any assistance you provide SrA Douglas is, to the contrary, very welcome and strongly encouraged. . . . If at any time you are approached by anyone attempting to pressure you, direct or otherwise, into a decision whether or not to testify or provide a letter of support on behalf of SrA Douglas, I ask you to immediately report the incident . . . .

opportunity to voice any concerns that had arisen since August or to raise additional motions, defense counsel responded, "Nothing at this time, Your Honor."

Appellant was subsequently found guilty and sentenced. On appeal to the CCA, Appellant asserted, among other things, that the military judge erred by not dismissing the charges and specifications after finding unlawful command influence and erred further when she found that the unlawful command influence would not affect the findings stage of the trial. Douglas, 2009 CCA LEXIS 41, at *2, 2009 WL 289705, at *1. The CCA disagreed that dismissal was mandated but agreed that the military judge erred in holding that the unlawful command influence could only have negatively impacted the sentencing portion of the trial. Id. at *12-*14, 2009 WL 289705, at *5. The CCA determined that but for MSgt Bialcak's influence, Appellant might have been able to more effectively pursue a good military character defense during the findings portion of his court-martial. Id. at *13, 2009 WL 289705 at *5.

Notwithstanding this error, however, the CCA found no prejudice because (1) there was no abuse of discretion in the type of corrective action chosen by the military judge, and (2) the corrective action was "ultimately implemented in a manner broad enough to dissipate any potential taint as to both findings and sentence." Id. at *14, 2009 WL 289705, at *5

9

(emphasis in original). The CCA found that the corrective action provided the opportunity to the defense -- had it so chosen -- to execute a trial strategy that included presentation of good character evidence during both the findings and sentencing phases of the trial. Id. at *14-*15, 2009 WL 289705, at *5.

## II. Discussion

The issue granted is whether the military judge erred by choosing a remedy other than dismissal after finding that MSgt Bialcak's no-contact orders and negative behavior discouraged witnesses from providing character statements for Appellant and resulted in unlawful command influence. We agree with the CCA that there was no abuse of discretion in the type of corrective action decided upon by the military judge.[4] However, once unlawful command influence is raised at the trial level, as it was here, a presumption of prejudice is created. Biagase, 50 M.J. at 150. To affirm in such a situation, we must be convinced beyond a reasonable doubt that the unlawful command influence had no prejudicial impact on the court-martial. Id. at 150-51. Although this is a close case, on the record we have here we are not so convinced.

---

[4] We also agree with the CCA that the impact of the unlawful command influence extended to both the findings and sentencing portions of the trial.

10

A.

Article 37(a), UCMJ, prohibits unlawful command influence. This prohibition includes attempts to interfere with access to witnesses.  See United States v. Gore, 60 M.J. 178, 185 (C.A.A.F. 2004) (condemning unlawful command influence directed against prospective witnesses); United States v. Stombaugh, 40 M.J. 208, 212-13 (C.M.A. 1994) (same).  Dismissal of the charges is one alternative if unlawful command influence is found. Gore, 60 M.J. at 187.

In a case involving unlawful command influence, we review issues involving a military judge's decision not to dismiss for abuse of discretion.  Id.  Under this standard, "'when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'"  Id. (quoting United States v. Houser, 36 M.J. 392, 397 (C.M.A. 1993)).  We grant a military judge broad discretion in crafting a remedy to remove the taint of unlawful command influence, and we will not reverse "so long as the decision remains within that range."  Id. (citation omitted).

This Court has recognized that "a military judge can intervene and protect a court-martial from the effects of unlawful command influence."  Biagase, 50 M.J. at 152 (citing

11

United States v. Rivers, 49 M.J. 434 (C.A.A.F. 1998)). We have looked with favor on military judges taking proactive, curative steps to remove the taint of unlawful command influence and ensure a fair trial. See, e.g., id. (approving of the military judge's forceful and effective discharge of his duties to protect the court-martial from unlawful command influence); Rivers, 49 M.J. at 444 (approving of the military judge's detailed and case-specific remedies that ensured the appellant's trial was untainted by unlawful command influence). As a last resort, a military judge may consider dismissal "when necessary to avoid prejudice against the accused." Gore, 60 M.J. at 187. "[D]ismissal of charges is appropriate when an accused would be prejudiced or no useful purpose would be served by continuing the proceedings." Id. (citing United States v. Green, 4 M.J. 203, 204 (C.M.A. 1978)). However, we have noted that "[w]hen an error can be rendered harmless, dismissal is not an appropriate remedy." Id. (citing United States v. Mechanik, 475 U.S. 66 (1986)). Dismissal "is a drastic remedy and courts must look to see whether alternative remedies are available." Id. (citation omitted); see also United States v. Cooper, 35 M.J. 417, 422 (C.M.A. 1992).

We find the specifically tailored nature of the remedy and Appellant's silence during and after the creation of the remedy instructive to our conclusion that the military judge acted

within her discretion in crafting a remedy aimed at ameliorating the effects of MSgt Bialcak's actions rather than dismissing the charges.  The military judge, after evaluating defense counsel's pretrial motion to dismiss, identified MSgt Bialcak's no-contact orders and his publicly and forcefully expressed negative attitude toward Appellant as unlawful command influence that could have discouraged potential witnesses from providing character statements on Appellant's behalf.  She then arrived at a remedy tailored to remove both roadblocks to obtaining character statements and any remaining specter of unlawful command influence.  In total, the remedy consisted of:  (1) providing a continuance to enable trial and defense counsel to co-author a memorandum from Appellant's commanding officer; (2) making the memorandum available to the defense; (3) allowing the defense to decide on the memorandum's use and to pursue such witnesses as it chose; and (4) "strong[ly] recommend[ing]" that (a) Appellant be removed from MSgt Bialcak's supervision and assigned to another office selected by Appellant's commander,[5] (b) MSgt Bialcak be issued an order from his commander to immediately cease and desist communications regarding Appellant and the investigations, charges, and court-martial, and (c) the

---

[5] We note, however, that even though the military judge recommended that Appellant be removed from MSgt Bialcak's supervision by transferring Appellant, it would have been at least as reasonable to transfer MSgt Bialcak, the source of the unlawful command influence.

13

Government immediately rescind both the cease and desist order and the order prohibiting Appellant from contacting members of his unit. While the memorandum alone would not have been enough to alleviate other impediments to Appellant obtaining witness statements -- such as the no-contact orders and continued comments and interference by MSgt Bialcak -- collectively, these actions were reasonably tailored to alleviate the harm in this case.

By not objecting during trial, defense counsel appeared to indicate his satisfaction with the potential efficacy of this remedy. This finding is bolstered by the fact that Appellant raises no claim for ineffective assistance of counsel here. On balance, we find the decision of the military judge not to dismiss the case in favor of attempting to remedy the unlawful command influence to be well within the bounds of her discretion.

B.

We remain vigilant, however, against unlawful command influence, which this Court has called "the mortal enemy of military justice."[6] United States v. Lewis, 63 M.J. 405, 407 (C.A.A.F. 2006) (quotation marks and citations omitted). While

---

[6] Unlawful command influence is not the "mortal enemy" of the military justice system because of the number of cases in which such influence is at issue, but rather because of the exceptional harm it causes to the fairness and public perception of military justice when it does arise.

the military judge stands watch as the "last sentinel" in the military justice system, United States v. Harvey, 64 M.J. 13, 14 (C.A.A.F. 2006) (quotation marks and citations omitted), once unlawful command influence is raised pretrial or at trial, the responsibility to protect the military justice system against unlawful command influence is not one unilaterally thrust upon the shoulders of the military judge. Rather, it is a shared responsibility. Id. at 17-18. The military judge, having crafted a reasonable remedy, is not required, in the face of apparent satisfaction from the defense, to intuit possible objections for the defense and then raise them sua sponte.

Herein lies the difficulty of this case: on the one hand, the military judge, acting within her discretion, crafted a remedy that would -- if fully implemented -- satisfy concerns about the effect of unlawful command influence in this case, and defense counsel -- after a lengthy continuance -- had no further objections or motions and did not request additional time. On the other hand, the burden of proof is on the Government, and the record does not itself reveal that all portions of the remedy crafted were implemented. Thus, while Appellant's acquiescence and silence are factors to consider -- factors that

make this a close case on this record[7] -- given that the burden of proof is on the Government, Gore, 60 M.J. at 186, we cannot be convinced beyond a reasonable doubt that the taint from the unlawful command influence did not prejudice Appellant.

The particular harm from the unlawful command influence in this case was that but for MSgt Bialcak's influence, Appellant might have been able to more effectively pursue a good military character defense during the findings and sentencing portions of his court-martial. The remedy as a whole was a reasonable and tailored means to combat that harm. But while the letter in the name of the commanding officer was drafted and available for use by the defense, the record does not reveal whether Appellant's commanding officer followed the remaining remedies crafted by the military judge regarding the orders MSgt Bialcak had previously issued. The record is unclear as to whether Appellant's commander either issued an order forbidding MSgt Bialcak from discussing the case with anyone except trial and defense counsel or rescinded the no-contact orders that precluded Appellant from contacting witnesses.

The record does reveal, however, that none of the witnesses that testified on the unlawful command influence motion that they were discouraged from providing character

---

[7] We note that this Court has not applied the doctrine of waiver where unlawful command influence is at issue. United States v. Johnston, 39 M.J. 242, 244 (C.M.A. 1994).

16

statements by MSgt Bialcak testified at trial.  And the record does not otherwise demonstrate that unlawful command influence did not deprive Appellant of favorable character witnesses.  See, e.g., Gleason, 43 M.J. at 74-75 (noting that the government could disprove the effect of unlawful command influence on obtaining character witnesses by showing that:  (1) the appellant in fact offered character evidence at trial; (2) there either was no evidence of good character available or that readily available rebuttal evidence of bad character made raising good character tactically implausible; or (3) the prosecution evidence at trial was so overwhelming that character evidence could not have had an effect (citing United States v. Thomas, 22 M.J. 388, 396-97 (C.M.A. 1986))).

Here, Appellant presented no favorable character testimony during his court-martial, the Government has not shown that presentation of a good character defense was unfeasible, and the Government has not met its burden of showing that the character evidence would have been completely ineffective.  Further, the record reveals that Appellant maintained his innocence even after his conviction[8] and that much of the evidence against him

---

[8] During the sentencing portion of the court-martial, for example, defense counsel again discussed the effect of MSgt Bialcak's behavior on Appellant's defense:  "He was ordered to stop talking with people, to stop assisting in his own defense,

came solely from the victim's own testimony.  Thus, despite the theoretical efficacy of the crafted remedy -- and while this would be a different case if evidence in the record indicated that the remedy had been implemented in full -- on this record we cannot say we are convinced beyond a reasonable doubt that Appellant was not deprived of the benefit of testimony from character witnesses as a result of the unlawful command influence.

When a military judge crafts a reasonable and tailored remedy to remove unlawful command influence, and if the record reflects that the remedy has been implemented fully and no further objections or requests were made by the defense, then rather than requiring the government to prove a negative we would be satisfied that the presumptive prejudice had been eliminated.[9]  See Biagase, 50 M.J. at 150.  However, as in this case, when the record fails to include evidence that key components of the remedy were implemented, the presumption of prejudice flowing from the unlawful command influence has not been overcome.  The government must then find an alternative way to meet its burden.  See, e.g., Gleason, 43 M.J. at 74-75.

---

an investigation that had been going on for two years, he was told to stop doing that. . . . This case is about an airman who was convicted before he ever set foot in the courtroom two years ago."

[9] This would be true even if an appellant did not pursue a good military character defense as there are tactical considerations, apparent or not, which could influence that decision.

## III.  Conclusion

The decision of the United States Air Force Court of Criminal Appeals is reversed and the findings and sentence are set aside.  A rehearing may be ordered.  The record of trial is hereby returned to the Judge Advocate General of the Air Force who shall refer the case to an appropriate convening authority to determine if a rehearing is practicable.  If the convening authority determines that a rehearing is impracticable, the charges shall be dismissed.

BAKER, Judge (dissenting):

While the unlawful command influence in this case was manifest, this is a close case on prejudice. One reason the prejudice call is a close one is because the manner in which the unlawful command influence issue was litigated does not fit neatly into the United States v. Biagase, 50 M.J. 143, 151 (C.A.A.F. 1999), framework. Specifically, under Biagase once unlawful command influence is found, the burden shifts to the government to disprove prejudice beyond a reasonable doubt. Id. However, the Biagase line of cases is addressed to instances of unlawful command influence identified after trial. This issue arose before trial. Moreover, the Biagase line did not contemplate nor address the circumstance where, as here, the defense expressed satisfaction with the remedial measures adopted by the military judge, in which context; the military judge did not require more from the government.

As a result, in this case there are arguments on both sides of the ledger. On the one hand, this is clearly a case where the chilling hand of unlawful command influence initially limited Appellant's opportunity to solicit favorable testimony. Because the Government bears the burden of proving beyond a reasonable doubt that the unlawful command influence was not prejudicial, it is placed in the position in this case of having to demonstrate a negative, that Master Sergeant (MSgt) Bialcak's

orders and actions did not continue to keep people from testifying after the remedy was put in place.  However, that is hard to do; to resort to one of the metaphors that seem to cling to unlawful command influence issues, one cannot un-ring a bell.  Perhaps, one of those putative witnesses would have vouched for Appellant's credibility or qualities as a member of the military.

On the other hand, neither the military judge nor the defense counsel put the Government to the test.  Defense counsel affirmed that the remedy had been implemented and, when given the opportunity to object or voice any concerns or raise additional motions, responded, "Nothing at this time."  Moreover, there is no evidence that Appellant was prejudiced in a military judge alone trial where the military judge understood what the putative witnesses might have said, where the military judge instituted a reasonable remedy, and where defense counsel expressed satisfaction with the result.

Weighing these two sides of the equation I would reach a different result than the majority in this case, therefore, I respectfully dissent.  As importantly, I disagree with the analytic structure and reasoning the majority adopts.

First, the majority embraces the dated unlawful command influence metaphor that the military judge is the last sentinel against unlawful command influence, but then relieves that

sentinel of her duties.  "The military judge, having crafted a reasonable remedy, is not required, in the face of apparent satisfaction from the defense, to intuit possible objections for the defense and then raise them sua sponte."  United States v. Douglas, __ M.J. __ (15) (C.A.A.F. 2010).  In my view, whatever metaphor we adopt, and it might be time to simply refer to the military judge as a military judge and not a sentinel, it is and remains the military judge's responsibility to address unlawful command influence at trial from start to finish, regardless of what the parties say.

Second, the majority concludes that the military judge's remedial actions were reasonable.  Id. at __ (14).  The majority also notes that the defense was given the opportunity to express concerns about the application of those remedies and did not.  Id.  That acquiescence is not waiver, but it is a factor the military judge reasonably considered in proceeding with sentencing.  Specifically, in the context of this case, in a military judge alone trial, the military judge did not require the Government to do something more to demonstrate a lack of unlawful command influence prejudice.  Although in retrospect, we now know it would have been better if the military judge had expressly determined that all the remedial measures had been implemented, I do not think the Biagese framework requires, or should require, the Government to nonetheless prove a negative

3

in the context where the defense expressed satisfaction, the military judge did not require more, and the military judge, sitting alone, had command of the facts that might be relevant to a good soldier case.

Third, in any event, the majority cites United States v. Gleason, 43 M.J. 69, 74-75 (C.A.A.F. 1995), for the proposition that the government has three means by which it can demonstrate a lack of prejudice in a character witness case. Douglas, __ M.J. at __ (16-17). Aside from the fact that Gleason does not provide or compel a checklist approach to prejudice, I would leave the appropriate means of demonstrating a lack of prejudice to the context of the individual case presented and the discretion of the military judge presiding. This is especially apt where the unlawful command influence is identified before trial and addressed, as opposed to the circumstances in Gleason and United States v. Thomas, 22 M.J. 388 (C.M.A. 1986), where it was identified after trial.

Military judges, counsel, and indeed all participants in the military justice system have a duty to remain vigilant to the risk of unlawful command influence on military justice. In this sense, the metaphor of the "mortal enemy" is still apt. If allowed in practice, unlawful command influence will have a corroding effect that could prove deadly to the confidence members of the Armed Forces and the public have in the military

4

justice system.  However, it is also fair to acknowledge that the system has matured and evolved since Thomas.  Thus, the metaphor remains less apt to the extent it conveys the sense that there is an enemy afoot -- a mortal enemy -- which one might expect to contest the system at every turn, like Cold War enemies or Carthage and Rome.  In this sense, the metaphor may suggest too much, in the way of a breathless presence, or omnipresence.  In that regard, one might better look to child pornography or processing delay in the military justice system as "mortal enemies."  However one describes unlawful command influence, in this case the problem was identified, reasonable remedial steps were taken, and both the military judge and defense counsel were satisfied with those steps before the military judge alone trial proceeded further.  As a result, I would find that there was no prejudice in this case and affirm the United States Air Force Court of Criminal Appeals decision.

STUCKY, Judge (dissenting):

I respectfully dissent from the judgment of the Court to set aside Appellant's conviction.

The military judge fashioned a remedy for the unlawful command influence and gave Appellant an opportunity to object to it. Appellant did not object and the military judge continued the court-martial until the remedy could be implemented. With the consent of the parties, the military judge reconvened the court-martial more than seventy days later. The military judge inquired as to the implementation of the remedy. Defense counsel affirmed that the remedy had been implemented and, when given the opportunity to object or voice any concerns or raise additional motions, responded, "Nothing at this time."

The majority notes that "this Court has not applied the doctrine of waiver where unlawful command influence is at issue." United States v. Douglas, __ M.J. __ (16 n.7) (C.A.A.F. 2010). This case is not about waiver of the unlawful command influence issue -- Appellant's attorneys raised, argued, and prevailed on that issue at trial. Instead, this case concerns whether an appellant has a duty to notify the military judge if and when an instituted remedy proves unsatisfactory. I believe he does.

The majority rests its holding on the fact that it does not know whether the remedy was successfully implemented because the

defense did not call any character witnesses to testify on Appellant's behalf at this judge-alone trial.  But there is good reason for our ignorance; the defense failed to complain at trial that the remedy was ineffective or provide facts upon which such a conclusion could be drawn, even though any such facts were solely within its knowledge.

Despite the absence of these necessary facts, the majority suggests the prosecution had a duty to show that the presentation of a good character defense was infeasible.  Id. at __ (17-18).  There are many reasons why Appellant's counsel may have finally decided not to present such a defense, even if it were feasible to do so.  Placing the burden on the prosecution to prove the defense was infeasible makes no sense, unless the majority believes that Appellant's counsel were ineffective.  On the record before us, there is no evidence or reason to believe that the same aggressive defense attorneys who had prevailed on the unlawful command influence issue suddenly lost their courage and were afraid to notify the military judge that the remedy had not been fully implemented or had not worked.  On the facts of this case, I am convinced beyond a reasonable doubt that the remedy fashioned by the military judge purged the taint of the unlawful command influence.