# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## David N. SHANNON
### Machinery Technician First Class (E-6), U.S. Coast Guard

## CGCMG 0278

## Docket No. 1358

## 12 April 2013

General Court-Martial convened by Commander, Eighth Coast Guard District.  Tried at New Orleans, Louisiana, on 16 November 2010 and 6 & 8 June 2011.

| | |
|---|---|
| Military Judges: | CAPT Gary E. Felicetti, USCG |
| | CAPT Michael E. Tousley, USCG |
| Trial Counsel: | LCDR Brian K. McNamara, USCG |
| Assistant Trial Counsel: | LCDR Angela R. Holbrook, USCGR |
| Defense Counsel: | LT Adam B. Brandon, JAGC, USN |
| Assistant Defense Counsel: | LT Anthony P. Sham, JAGC, USN |
| Appellate Defense Counsel: | LCDR Paul R. Casey, USCG |
| | LT Jonathan C. Perry, USCGR |
| Appellate Government Counsel: | LT Amanda M. Caprari Lee, USCG |

## BEFORE
## McCLELLAND, JOHNSON & NORRIS
Appellate Military Judges

NORRIS, Judge:

Appellant was tried by general court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of maltreatment, in violation of Article 93, Uniform Code of Military Justice (UCMJ); two specifications of assault, in violation of Article 128, UCMJ; and one specification of wrongfully providing alcoholic beverages to a minor, in violation of Article 134, UCMJ.  The military judge sentenced Appellant to a bad-conduct discharge and reduction to E-3.  The Convening Authority approved the sentence as adjudged.  The pretrial agreement did not affect the sentence.

Before this Court, Appellant has assigned the following errors:

I.       The Military Judge abused his discretion by not dismissing the charges against Appellant after finding unlawful command influence.

II.      The Military Judge abused his discretion by not dismissing Appellant's case with prejudice after granting Appellant's motion to dismiss for violations of RCM 707(a).

We heard oral argument on 30 January 2013. We discuss both issues and affirm.

### Unlawful Command Influence

In this case, the incident that precipitated the charges against Appellant was his alleged rape of the girlfriend of one of his shipmates. Upon this accusation being made, Appellant was removed from his command, USCGC GREENBRIER, and was sent to another command. Over the next 13 months, the Officer-in-Charge (OIC) of GREENBRIER repeatedly referred to Appellant as "the rapist" in all manner of settings, including in front of the entire crew.[1] This behavior was the basis for a motion to dismiss for unlawful command influence (UCI), which was litigated at an Article 39(a), UCMJ, session on 16 November 2010. At that session, the defense produced four of Appellant's GREENBRIER shipmates who all testified to two central points: (1) that they had heard the OIC refer to Appellant as "the rapist" on multiple occasions, and (2) that these derogatory references to Appellant did not adversely affect their opinion of him, since they already held him in poor regard due to a variety of other personal and professional transgressions. The defense presented no other evidence of witness chilling as a result of the OIC's statements; nor, however, did the Government disprove beyond a reasonable doubt that chilling might have occurred. Accordingly, the military judge issued an order on 18 November 2010 finding that the "torrent" of rapist comments by the OIC constituted UCI,[2] and ordering that a number of remedial measures be taken to rectify it. These measures included:

---

[1] The military judge found as fact that such comments had occurred 30-50 times, maybe more. (Appellate Ex. XVI at 3.)

[2] Though the military judge did not specifically identify other behavior as constituting UCI, his findings of fact and his remedial measures indicate that he considered the following actions, either singly or collectively, to constitute UCI: (1) "advice" by the unit executive petty officer (XPO) to Appellant that could reasonably have been interpreted by him as an order not to contact any GREENBRIER crewmembers; (2) the XPO telling the crew not to contact Appellant; (3) the OIC conducting mandatory all-hands training at which he provided an erroneous definition of "rape" and, though he did not refer to Appellant by name, made it clear that the rape allegation against him was the basis for the training. Op. and Order, 18 November 2010, pp. 2-3.

1. The Government providing to the defense a list of all GREENBRIER crewmembers, along with current contact information, who were assigned to the unit from 22 May 2009 to late June 2010, the period during which the "rapist" comments were made (hereinafter referred to as "impacted crewmembers");

2. The Government providing the defense with travel orders permitting them, at their discretion, to conduct in-person interviews of all impacted crewmembers in the continental United States;

3. Requiring the Government to produce any impacted crewmembers desired by the defense at trial;

4. Requiring a Coast Guard official with supervisory authority over both GREENBRIER and her parent command to prepare a letter to be delivered by the Government to all impacted crewmembers informing them that: (1) the OIC's "rapist" comments were wrong; (2) the OIC's definition of "rape" he provided during crew training was wrong; (3) any similar comments or apparent agreement with the OIC's comments by other senior enlisted leaders was wrong; (4) any orders prohibiting communications between them and Appellant were rescinded; (5) anyone with knowledge of the case and/or with information potentially favorable to the defense was encouraged to communicate with counsel, particularly defense counsel, for whom contact information was to be provided; (6) there would be no retaliation, of any kind, against anyone who assists the defense; and (7) an ombudsman (identified in the letter) would be appointed, to whom they could go with complaints of discouragement from or retaliation for helping the defense;

5. Requiring the Government to produce copies of all letters sent out, and attaching them to the record as appellate exhibits;

6. A commitment that a continuance "will be granted" if the defense needed more time to interview affected crewmembers; and

7. Not allowing two identified crewmembers to testify regarding any victim impact on themselves in the event Appellant was convicted of charges that specifically related to them.

On appeal, Appellant claims that the military judge erred by not dismissing the charges with prejudice instead of crafting remedies and allowing the charges to go forward. In cases involving unlawful command influence, reviewing courts examine issues involving a military judge's decision not to dismiss for abuse of discretion. *United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010) (citing *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004)). Under this standard, "'when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Douglas*, 68 M.J. at 354 (quoting *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993)). Reviewing courts are to grant a military judge "broad discretion" in crafting a remedy to remove the taint of unlawful command influence, and are admonished not to reverse "so long as the decision remains within that range." *Id.* (citation omitted). "[D]ismissal of charges is appropriate when an Appellant would be prejudiced or no useful purpose would be served by continuing the proceedings." *Gore*, 60 M.J. at 187 (citing *United States v. Green*, 4 M.J. 203, 204 (C.M.A. 1978)). However, "[w]hen an error can be rendered harmless, dismissal is not an appropriate remedy." *Id.* (citing *United States v. Mechanik*, 475 U.S. 66 (1986)). Dismissal "is a drastic remedy and courts must look to see whether alternative remedies are available." *Id.* (citation omitted); *see also United States v. Cooper*, 35 M.J. 417, 422 (C.M.A. 1992).

In *Douglas*, the appellant's supervisor, upon hearing that the appellant was under investigation, ordered him not to contact any members of his unit without permission, openly disparaged the appellant in front of potential witnesses, expressed his certainty of the appellant's guilt, intimidated potential character witnesses from testifying favorably on the appellant's behalf, and intimidated the appellant into not filing a report with the Inspector General regarding these actions. 68 M.J. at 352. At the unlawful command influence motion hearing in that case, the defense presented evidence that multiple witnesses would have presented favorable character evidence on the appellant's behalf but were chilled from doing so by the supervisor's intimidation. *Id.* In response to this demonstrated unlawful command influence, the military judge declined to dismiss the charges, as requested; however, she did craft remedies that are strikingly similar to the ones employed in this case:

1.  The military judge ordered a continuance so that trial and defense counsel would have the opportunity to, among other things, jointly author a memorandum directed at potential character witnesses. The memorandum, which was to be written in the name of the appellant's commanding officer, was to be "utilized by defense counsel and the Accused to facilitate the securing of character statements on behalf of the Accused." *Id.* at 353.

2.  The continuance would remain in effect for a period of time to "be determined by the Court, subsequent to the finalization and approval of the memorandum." *Id.*

3.  The military judge made several "strong recommendation[s]" designed to remove the appellant from the offending supervisor's chain of command, to prevent the supervisor from discussing the case with anyone except trial and defense counsel, and to rescind his previously issued no-contact orders. *Id.*

4.  The military judge "provided counsel with an opportunity to question or state an objection regarding the memorandum, told counsel that she was continuing the court-martial until counsel were ready to proceed, and gave both parties another opportunity to express any concern regarding the production of witnesses or identify other unresolved issues." *Id.*

Applying the law as previously set out, the Court of Appeals for the Armed Forces (CAAF) in *Douglas* determined that these remedies collectively were reasonable and tailored means of combatting the unlawful command influence threat in that case – namely, that but for the supervisor's intimidating behavior, the defense would have been able to present a more effective good military character defense during the findings and sentencing. *Id.* at 356. The court further concluded that the military judge acted within her discretion in crafting a remedy aimed at ameliorating the negative effects of the unlawful command influence, rather than dismissing the charges. *Id.* at 355. "On balance," the court concluded, "we find the decision of the military judge not to dismiss the case in favor of attempting to remedy the unlawful command influence to be well within the bounds of her discretion." *Id.*

We reach the same conclusion in this case. The military judge crafted reasonable, tailored remedies that aggressively countered the potential chilling effect on witnesses of the OIC's "rapist"

comments, the no-contact order, and other behaviors that could constitute unlawful command influence. There was less reason to dismiss in this case than in *Douglas*, given that (unlike as in *Douglas*) the defense was unable to produce any witnesses who testified that their favorable opinion of Appellant, and their willingness to provide positive character evidence on his behalf at trial, was materially impacted by the unlawful command influence. As did the court in *Douglas*, we find the decision of the military judge not to dismiss the case in favor of attempting to remedy the unlawful command influence to be well within the bounds of his discretion.

This does not end our inquiry, however. The court in *Douglas*, while endorsing the judge's remedial actions in that case, ended up reversing the appellant's conviction on the basis that the record contained inadequate evidence demonstrating that the ordered remedies were actually carried out. *Id.* at 356. Specifically, the court found that while the letter in the name of the commanding officer was drafted and available for use by the defense, the record was silent as to whether the appellant's commanding officer followed the remaining remedies crafted by the military judge regarding the no-contact orders issued by the appellant's supervisor. *Id.* Furthermore, according to the court, the record is unclear as to whether the appellant's commander issued an order forbidding the appellant's supervisor from discussing the case with anyone except trial and defense counsel, or rescinded the no-contact orders that precluded the appellant from contacting witnesses. *Id.* Central to the court's holding was the absence of any affirmative evidence to indicate the remedies had been carried out. *Id.* Other than a discussion on the record regarding the joint memorandum, of which the defense confirmed that they had received a copy, the only other evidence regarding the remedial measures was the defense responding, "Nothing at this time, Your Honor," to the judge's invitation to them to voice any concerns that still lingered regarding the UCI issue, or to raise additional motions if desired. *Id.* at 353.

In the instant case, Appellant argues that there is no evidence in the record to show the remedies crafted by the military judge were implemented. Specifically, he contends that the record does not contain a list of the crew who were or had been assigned to the unit. We reject this argument. As opposed to the situation in *Douglas*, there is affirmative evidence in the record in the instant case that the remedies were carried out. The record contains twenty-six letters individually addressed to different Coast Guard members, informing them of the matters that the military judge required to be addressed with all affected crewmembers. As the crew size of GREENBRIER was

normally about nineteen, the fact that twenty-six letters were drafted supports an inference that the twenty-six addressees were the impacted crewmembers.

More importantly, the military judge, in his "2nd Amendment to COURT ORDER #1" dated 18 March 2011, states, "The Defense reported [at a 14 January 2011 telephonic conference under Rule for Courts-Martial (R.C.M.) 802, Manual for Courts-Martial, United States (2008 ed.) ] that the actions ordered to remedy the UCI were complete." This document further reflects that the military judge had, on 17 December 2010, granted an "indefinite continuance to permit the Defense to complete actions necessary to remedy the UCI . . ." in response to a defense advisement during a telephonic R.C.M. 802 conference on 16 December 2010 that they needed more time to implement the ordered UCI remedy.[3] At the next Article 39(a) session, on 6 June 2011, counsel were invited to supplement the record of trial with respect to all pretrial activities dating back to 1 September 2010. In response to this invitation, defense counsel stated, "Sir, Defense has nothing to add . . . ." ($R_2$[4] at 28, 30.) Similarly, when the military judge invited motions shortly thereafter, the defense renewed all their previous motions without elaboration, adding no new contentions or concerns. ($R_2$ at 33.) In short, the unrebutted evidence in the record is that, as stated by the military judge (noted above), "the actions ordered to remedy the UCI were complete."

Furthermore, contrary to Appellant's argument that the record "cannot answer whether Appellant's lack of favorable character witnesses from the GREENBRIER was a result of the effects of the officer-in-charge's unlawful command influence" (Assignments of Error and Brief dated 9 January 2012), the record strongly suggests that the reason Appellant called no favorable character witnesses at trial was because any favorable character evidence would have enabled the Government to rebut with unfavorable character evidence.

For these reasons, we reject Appellant's first assignment of error.

---

[3] The military judge noted in a footnote to the court order that the defense needed time to speak with 16 of 25 potential new witnesses who had been subject to the UCI.

[4] The trial was held on three separate dates: 16 November 2010, 6 June 2011, and 8 June 2011. Pagination of the trial restarts at 1 on each of these dates. $R_2$ herein denotes transcript pages from 6 June 2011.

**Speedy Trial**

This case had an unusual procedural history that needs to be discussed in some detail. Charges were preferred on 20 October 2009, and an additional charge was preferred on 29 December 2009 (hereinafter collectively referred to as "first charges"). An Article 32 hearing was conducted on 20 January 2010. The Convening Authority referred the charges to a General Court-Martial on 8 March 2010. On 19 April 2010, Appellant filed a motion to dismiss for a violation of R.C.M. 707. At an Article 39(a) session on 19-20 May 2010, the Government chose not to oppose this defense motion to dismiss. On 27 May 2010, the military judge issued an order of dismissal, without prejudice, in response to this R.C.M. 707 motion. Defense did not request reconsideration of this ruling or otherwise object to it.

A second set of charges was preferred on 8 June 2010 (hereinafter referred to as "second charges"). These charges generally conformed to the first charges. Most importantly, charges that existed in the first charges, and which were dismissed without prejudice as a result of the defense's R.C.M. 707 motion, were re-charged in the second charges. An Article 32 hearing was conducted on 26-27 June 2010. Charges were referred to a General Court-Martial on 17 September 2010. The same judge that was assigned in the first trial (hereinafter referred to as "first judge") was assigned to the second trial. This judge made numerous case management decisions and ruled on a number of defense motions. During the second trial, the defense never raised the issue of the character of dismissal of the first charges, though on 8 April 2011 they did raise a Constitutional speedy trial motion citing *Barker v. Wingo*, 407 U.S. 514 (1972). (Appellate Ex. XXX at 1.) This motion was focused on alleged delays from the time of preferral of the second charges, i.e. the motion did not in any manner "reach back to" or address any delay involved in the first trial.[5] In particular, the defense set out a detailed timeline on page 11 of Appellate Ex. XXX, entitled "Dates of Significance," that begins on 18 November 2010, which is well within the second trial. The first judge was then replaced by a second judge (hereinafter referred to as such). The second judge denied defense's Constitutional speedy trial motion. (Appellate Ex. XXXVI at 9.) At trial on 6-8 June 2011, Appellant pled guilty as previously discussed.

---

[5] The only reference to delay and the first trial is in footnote 4 of Appellate Ex. XXX at 6, in which the defense characterized their R.C.M. 707 motion as one of "numerous previous demands for trial."

Appellant is not challenging the second judge's denial of the Constitutional speedy trial motion at the second trial; his specific contention on appeal is that the first judge erred in his "without prejudice" dismissal of the first charges in the first trial.

From 27 May 2010, when the first judge dismissed the first charges without prejudice on R.C.M. 707 grounds, to 9 January 2012, when Appellant, on appeal, raised the issue of the character of dismissal of the first charges, the record is entirely devoid of evidence that Appellant took any action to challenge the nature of the dismissal.[6] Appellant was not without possible remedy to make such a challenge. He could have litigated the issue of the character of the dismissal of the first charges by moving to dismiss at his second trial, contending that the dismissal ordered at the first trial should have been with prejudice. He could have petitioned this court or CAAF for extraordinary relief.[7] He failed to do either. Instead, he chose to appeal an issue from his first trial as part of his appeal from his conviction at his second trial. This Court does not have jurisdiction over rulings issued at Appellant's first court-martial in this appellate process arising out of his plea and conviction at his second court-martial. *United States v. Brevard*, 58 M.J. 124, 127 (C.A.A.F. 2003). Appellant underwent two separate trials, and the appeals process for his second trial is not a proper forum in which to appeal rulings made in the first trial.

Thus, we have jurisdiction to consider Appellant's R.C.M. 707 speedy trial issue, specifically the character of the dismissal ordered at the first trial, only to the extent that the issue arises in the second trial. Since Appellant did not raise the issue during the second trial, we conclude that Appellant waived his right to appeal the issue of the character of dismissal of the first charges by his guilty plea. An unconditional plea of guilty waives all nonjurisdictional defects at earlier stages of the proceedings. *United States v. Bradley*, 68 M.J. 279, 281 (C.A.A.F. 2010) (citing *United States v. Joseph*, 11 M.J. 333, 335 (C.M.A. 1981)). As to waiver of a speedy trial issue specifically, see R.C.M. 707(e).

---

[6] The only thing Appellant could possibly point to that might constitute a challenge to the nature of the dismissal of the first charges is defense counsel's statement at the second trial that "we do renew all the motions that we made previously before [the first judge]." ($R_2$ at 33.) There is no reason to believe the motions that the defense desired to renew included motions made at the first trial, as opposed to the motions that had been litigated before the first judge at the second trial.

[7] Both the Coast Guard Court of Criminal Appeals (Rule 2) and the Court of Appeals for the Armed Forces (Rule 4(b)) have mechanisms for entertaining original petitions for extraordinary relief including, but not limited to, writs of mandamus, writs of prohibition, writs of habeas corpus, and writs of error coram nobis.

Appellant contends that he entered a conditional plea of guilty in accordance with R.C.M. 910(a)(2), and thereby preserved his ability to appeal the judge's speedy trial ruling. In support of this contention, he draws this court's attention to specially negotiated provision g. to the Pretrial Agreement (PTA), and the trial judge's interpretation of its meaning and effect. Specially negotiated provision g. states that Appellant "ha[s] not been compelled to waive [his] right to due process, the right to challenge the jurisdiction of the court-martial, the right to a speedy trial, the right to raise the issue of unlawful command influence, or any other motion that cannot be waived." As to the meaning and effect of this provision, the military judge initially advised Appellant as follows:

> Prior to entering your guilty pleas, you, through your defense counsel, made the following motions. One, to dismiss for unlawful command influence, dated 18 November 2010, to appoint a third defense counsel, dated 6 April 2011. Three, to compel expert witness testimony, dated 10 April 2011. Four, to dismiss Charge II as unconstitutional, dated 15 April 2011, and five, to dismiss for speedy trial, dated 22 April 2011. These I denied and [the first judge] denied prior to my denial. Do you understand that, by pleading guilty, you waive the right to appeal those issues?

(R$_3$ at 81-82.)

After rendering this advisement, the military judge must have noticed some discomfiture of counsel, as he immediately asked if counsel desired a recess. In response, the defense stated, "Your Honor, we would like to look at the Pretrial Agreement, under especially negotiated provisions, Paragraph G. I believe it's not waiving all of the motions." (R$_3$ at 82.) After a recess was granted, during which time the judge and counsel apparently conferred, the judge announced on the record to Appellant that

> Not all of your prior motions can be, but are waived by your guilty plea. Two of them, in particular, are not. One of them is the unlawful command influence motion. That's not waived. So on appeal, you could raise that issue again, as well as the speedy trial motion. That is not waived by your guilty plea either.

(R$_3$ at 83.) After ensuring Appellant understood the meaning and effect of this advisement, the military judge further informed him, "So those issues are still out there for you." (R$_3$ at 83-84.)

Appellant argues that this colloquy amounted to a conditional plea, which preserved any speedy trial issue, including the speedy trial issue under R.C.M. 707 from the first trial. We disagree. We do not believe the colloquy was about a conditional plea. Rather, it was a discussion of the fact that certain issues cannot be waived as a matter of law. The military judge's acknowledgment that the speedy trial issue was not waived related only to Appellant's Constitutional speedy trial motion in the second trial, and did not encompass his R.C.M. 707 speedy trial motion from the first trial. This conclusion is warranted because (1) the only speedy trial motion that had been litigated before this judge was the Constitutional motion; the R.C.M. 707 speedy trial issue from the first trial had never been the subject of any substantive discussion at the second trial; (2) the judge's initial advisement to Appellant was that, by his plea, he would waive five enumerated motions, including the Constitutional speedy trial motion from the second trial; the R.C.M. 707 speedy trial motion was not one of the enumerated motions ($R_3$ at 81-82); and (3) following the recess, when the military judge revised his advice to Appellant that he would be able to appeal the speedy trial issue, notwithstanding his guilty plea, his advisement was singular, i.e. his plea did not waive "the" speedy trial "motion." ($R_3$ at 83.)

Unlike a denial of due process such as is envisioned by a Constitutional speedy trial motion citing *Barker v. Wingo*, a speedy trial issue under R.C.M. 707 can be waived. R.C.M. 707(e); *United States v. Tippit*, 65 M.J. 69, 75 (C.A.A.F. 2007). Hence Appellant's guilty plea waived any issue regarding the character of the dismissal of the first charges. Even if Appellant's plea could be considered a conditional plea, it is clear that preservation of the right to appeal the character of the dismissal of the first charges was not a condition upon which Appellant's plea was made. Thus, on the general principle that a guilty plea waives any defects, as well as by reference to R.C.M. 707(e), Appellant waived his right to appeal that issue by his guilty plea.

For these reasons, we reject Appellant's second assignment of error.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Chief Judge McCLELLAND and Judge JOHNSON concur.

For the Court,



Andrew R. Alder
Clerk of the Court