# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, WILLIAMS, and COOPER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant ALEX CEPEDA**
**United States Army, Appellant**

ARMY 20240153

Headquarters, 1st Armored Division and Fort Bliss
Scott Z. Hughes, Military Judge
Colonel Kristy L. Radio, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Robert D. Luyties, JA; Captain Andrew W. Moore, JA (on brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Justin L. Talley, JA; Major Marc B. Sawyer, JA (on brief).

28 July 2025

-----------------------------------
SUMMARY DISPOSITION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

COOPER, Judge:

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant requests sentence relief for prosecutorial misconduct, alleging intimidating and inappropriate behavior by the government.[1] We find no relief is warranted as the military judge-imposed remedies cured any potential prejudice.

## BACKGROUND

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of sexual assault of a child and three

---

[1] Appellant briefed one assignment of error to which we have given full and fair consideration, but ultimately determine warrants neither discussion nor relief.

specifications of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice, 10 U.S.C. § 920b (2018 & Supp. I 2020) [UCMJ]. He sentenced appellant to a dishonorable discharge, confinement for sixty months, and reduction to the grade of E-1.

Prior to appellant's guilty plea, the assistant trial counsel (ATC)—who also served as the installation's field grade special trial counsel—interviewed three defense sentencing witnesses. Based on these interviews, appellant's trial defense counsel filed a motion to dismiss for unlawful command influence (UCI) alleging prosecutorial misconduct.[2] The military judge held a hearing to resolve the defense UCI motion, and the three defense witnesses testified about their call with the ATC.

First Lieutenant (1LT) █ testified she would no longer testify for appellant because of her conversation with the ATC. She described the ATC yelling at her over the phone, and his "tone of voice" made her feel like she was being attacked. She felt she "should not open [her] mouth. [She] should not be involved with it period." Immediately after the call, 1LT █ told her former company commander, Captain (CPT) █, about her conversation with the ATC and that she no longer wanted to testify for appellant.

Sergeant (SGT) █ testified that after his conversation with the ATC, he would no longer testify for the appellant. He described feeling "bombarded" on the call and noted the ATC was "aggressive and rude, and not being professional." Sergeant █ felt the ATC's tone of voice and questions made SGT █ feel he should not testify. Immediately after the call, SGT █ went to CPT █ and explained the conversation. Sergeant █ stated he was uncomfortable testifying for appellant.[3]

Sergeant First Class (SFC) █ testified the ATC's interview seemed like an attempt to dissuade SFC █ from testifying for appellant. He described he was shocked by the vulgarity of the details the ATC shared and thought "[m]aybe this is trying to get me to say, oh, no, I don't want to do this." However, SFC █ affirmed he would still testify on appellant's behalf.

---

[2] Although prosecutorial misconduct, depending on the facts asserted, can constitute UCI, it can also serve as a separate legal theory upon which the defense could have filed a separate motion to dismiss. Defense counsel, however, did not file a separate motion under the legal theory of prosecutorial misconduct.

[3] Of note, after hearing from 1LT █ and SGT █, CPT █ called the brigade judge advocate—who also happened to be the trial counsel in this court-martial—to report the "harassing" calls 1LT █ and SGT █ received from the ATC and to share that 1LT █ no longer wanted to testify for appellant. Nothing further came of CPT █'s call to the trial counsel, nor was there any indication that information was shared with defense counsel.

The government called Staff Sergeant (SSG) ███, a paralegal who was on the phone call interviews with the ATC. The paralegal testified the ATC did not yell, curse, issue any threats or display any anger on the calls. The ATC asked if SSG ███ had reviewed the stipulation of fact and upon her affirmation, asked, "It's pretty disgusting, right?" and "I mean, it deals with child rape, right?" On cross-examination, the paralegal agreed the ATC can be direct, blunt, and very passionate. Staff Sergeant ███ acknowledged her perception, after working with him for almost two years, might differ from someone who had never met him before.

Following testimony, the military judge asked the parties to brief the issue. At the next hearing, the military judge denied the defense's motion to dismiss for UCI but directed several prophylactic remedies. First, he disqualified the ATC and his co-counsel. Second, he barred the government from cross-examining the three defense witnesses who had testified at the hearing. Third, he personally called the three defense witnesses on the record and explained: 1) the ATC was disqualified, 2) no one would cross-examine them, and 3) they would not be treated poorly or judged for testifying on behalf of appellant. The military judge asked if they were then willing to testify truthfully, without feeling restrained in their comments. All three defense witnesses answered in the affirmative and ultimately testified on appellant's behalf.

Finally, in addition to the specific remedies laid out above, the military judge indicated he would take the ATC's conduct into consideration when deliberating on the sentence. Defense did not request any additional remedies or object to the ones provided, following the military judge's announcement. The sentence adjudged included sixty months of confinement, the lowest possible amount of confinement authorized by the plea agreement.

## LAW AND DISCUSSION

We review allegations of prosecutorial misconduct de novo. *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (internal citation omitted). If an objection is made during trial, we review for prejudicial error. *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citing UCMJ art. 59). "If no objection is made, we hold the appellant has forfeited his right to appeal and review for plain error." *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citing *Fletcher*, 62 M.J. at 179). To prevail under plain error, appellant must demonstrate: "(1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused." *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (internal quotations and citation omitted).

"[P]rosecutorial misconduct occurs when a 'prosecuting attorney oversteps the bounds of propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *Fletcher*, 62 M.J. at 179

(quoting *Berger v. United States*, 295 U.S. 78, 84, (1935)). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88). "Several legal norms are violated when a trial counsel attempts to or unlawfully dissuades a defense witness from testifying at a court-martial," including appellant's "right to compulsory process under the Sixth Amendment . . . ." *Id.* at 5-6. Such acts further open the trial counsel for additional, personal scrutiny. *Id.* at 6 (noting that such acts can constitute a criminal violation of UCMJ art. 131b, obstructing justice; and are otherwise in violation of UCMJ art. 37(a)(2) (unlawful to deter or attempt to deter a potential witness from testifying at trial)).

Where prosecutorial misconduct is found, it does not, by itself mandate a dismissal of charges or a rehearing, rather, "an appellate court usually considers the legal norm violated by the prosecutor and determines if its violation actually impacted on a substantial right of an accused (*i.e.*, resulted in prejudice)." *Id.* at 5. "'In assessing prejudice, we look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial.'" *Andrews*, 77 M.J. at 402 (quoting *Fletcher*, 62 M.J. at 184).

On appeal, appellant now alleges prosecutorial misconduct, as opposed to UCI, as the legal grounds upon which this court should grant relief. He argues the ATC's intimidating interviews of the three defense witnesses, his misrepresentation of the charge appellant pleaded guilty to (calling it "rape" instead of sexual assault) and the government's failure to disclose its prior knowledge of the ATC's problematic interviews with defense witnesses constitutes prosecutorial misconduct. The military judge-imposed remedies, discussed below, cured any prejudice to appellant's substantial rights and ensured the fairness and integrity of his trial.

Although the appellant did not specifically assert UCI on appeal, we have reviewed the record and find beyond a reasonable doubt the findings and sentence in appellant's case were not affected by any alleged UCI.[4] After the military judge personally spoke with the three defense witnesses to alleviate any concerns they may have had about testifying, they each agreed to testify, and during defense's sentencing case, the witnesses provided a "robust endorsement" of appellant. "When a military judge crafts a reasonable and tailored remedy to remove unlawful command influence, and if the record reflects that the remedy has been

---

[4] "[O]nce the issue of unlawful command influence is raised, the Government must prove beyond a reasonable doubt: (1) that the predicate facts do not exist; or (2) that the facts do not constitute unlawful command influence; or (3) that the unlawful command influence will not prejudice the proceedings or did not affect the findings and sentence." *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999).

implemented fully and no further objections or requests were made by the defense, then . . . we would be satisfied that the presumptive prejudice had been eliminated." *United States v. Douglas*, 68 M.J. 349, 356-57 (C.A.A.F. 2010) (internal citation omitted).

We highlight below five remedies the military judge applied to resolve any UCI allegations raised at trial and any alleged prosecutorial misconduct concerns raised on appeal.

First, the military judge appropriately admonished the ATC for his conduct. On the record, he directed the ATC to "watch [his] tone," cautioned the ATC that his tone was aggressive, and advised the ATC to be more tempered in conversations with witnesses. The military judge stated directly to the government, "Don't do this when you call people. Don't attack on a phone call." Additionally, after the witnesses testified that the ATC described appellant's conduct as "child rape" and the ATC referred to it that way during the hearing, the military judge commented on the ATC's inappropriate mischaracterization of offenses. The military judge stated, "I don't like the fact that he mischaracterized the charges that the accused [was] facing. I think that that's inappropriate for him to do that."

Second, the military judge disqualified the ATC and his co-counsel from the case. Third, the military judge barred the government from cross-examining the three defense witnesses during their sentencing testimony. Fourth, he personally called the three defense witnesses to ensure they understood they could testify truthfully and freely on behalf of appellant without any fear of repercussion. All three defense witnesses did, in fact, testify for appellant. Finally, after indicating he would consider this issue when deliberating on the sentence, the military judge sentenced appellant to sixty months of confinement, the lowest possible confinement sentence pursuant to the plea agreement.

While we do not condone the ill-advised tone and demeanor of the ATC during his interviews with subordinate defense witnesses, we find no prejudice to appellant.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge FLEMING and Judge WILLIAMS concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court