# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**RONNIE G. OAKLEY, JR.**
**INFORMATION SYSTEMS TECHNICIAN**
**THIRD CLASS (E-4), U.S. NAVY**

**NMCCA 201200299**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 13 September 2013.
**Military Judge:** CAPT Andrew Henderson, JAGC, USN.
**Convening Authority:** Commander, Navy Region Northwest, Silverdale, WA.
**Staff Judge Advocate's Recommendation:** LCDR D.E. Rieke, JAGC, USN.
**For Appellant:** LT Jennifer Myers, JAGC, USN.
**For Appellee:** LCDR Keith B. Lofland, JAGC, USN; Capt Cory Carver, USMC.

**21 April 2015**

---------------------------------------------------
### OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

FISCHER, Senior Judge:

This case is before us for a second time. In March 2012, a general court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of aggravated sexual assault and committing an indecent act in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920.

The members sentenced the appellant to three months' confinement, forfeiture of all pay and allowances, reduction to pay grade E-1, and a bad-conduct discharge. On the first appeal, we set aside the findings and sentence due to instructional error. *United States v. Oakley*, No. 201200299, 2013 CCA LEXIS 245, unpublished op. (N.M.Ct.Crim.App. 26 Mar 2013).

At a rehearing in September 2013, a general court-martial consisting of officer and enlisted members again convicted the appellant, contrary to his pleas, of one specification each of aggravated sexual assault and committing an indecent act, in violation of Article 120, UCMJ. The appellant was sentenced to reduction to pay grade E-1, forfeiture of all pay and allowances, five years' confinement, and a dishonorable discharge. The convening authority (CA) approved only so much of the sentence as was adjudged at the appellant's first court-martial and, except for the punitive discharge, ordered the sentence executed.

The appellant raises eight assignments of error (AOE).[1] After carefully considering the record of trial, the submissions

---

[1] The appellant raises the following AOEs:

I. The findings from his original trial were ambiguous and unreviewable and thus subjected him to double jeopardy at his rehearing.

II. The military judge abused his discretion by denying the defense challenge for cause against LT S.

III. The military judge abused his discretion by failing to declare a mistrial when a defense witness provided less favorable presentencing testimony at the rehearing after members of his command admonished him for favorable comments he made about the appellant during the original trial.

IV. The military judge erred in finding no apparent unlawful command influence.

V. The military judge erred in admitting into evidence the appellant's statements to Naval Criminal Investigative Service (NCIS) agents.

VI. The military judge erred by admitting evidence that the appellant previously sexually assaulted the victim when he was twelve years old.

VII. The military judge erred by permitting the victim's mother to testify that the victim told her the appellant "attacked" her as an excited utterance. We find no merit to this AOE. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

VIII. The military judge erred by failing to dismiss Specification 1 of the sole Charge when the members in the original trial necessarily acquitted the appellant of all of the elements of aggravated sexual assault.

of the parties, and oral argument[2], we are convinced that the findings and sentence are correct in law and fact and that no error materially prejudicial to substantial rights of the appellant occurred.  Arts. 59(a) and 66(c), UCMJ.

## I. Background

The appellant's conviction arose from an incident with his then 19-year-old stepsister, Culinary Specialist Third Class (CS3) FC, on 29 April 2011.  That evening, the appellant, CS3 FC, and other members of their family were drinking alcohol together for several hours in the home of the appellant's father and step-mother.  Later that evening, CS3 FC fell asleep on a recliner in the den of the home.  Sometime after she fell asleep, the appellant entered the den and digitally penetrated her vagina while he masturbated.

Following these events, agents from the Naval Criminal Investigative Service (NCIS) interrogated the appellant.  During the interrogation, the appellant provided both a handwritten and typed statement detailing his recollection of the evening.[3]  In his statements, he admitted that he may have digitally penetrated CS3 FC's vagina while she lay sleeping on the recliner; however, he also indicated that he thought she acquiesced when she "open[ed] her legs wider."[4]

At the appellant's first trial CS3 FC testified that the appellant entered the den three separate times while she lay in the recliner sleeping.  However, she testified that he sexually assaulted her only during the first and third instances.  She testified that second instance was when she awoke to the appellant smoking a cigarette.  At the conclusion of evidence, the military judge entered findings of not guilty to the words "on divers occasions" in each of the three Article 120 offenses (aggravated sexual assault, wrongful sexual contact, and indecent act).  The military judge subsequently directed that the findings worksheet specify findings by delineating the two instances for the three Article 120 offenses with the "smoking of the cigarette as the focal point."[5]  The members found the appellant not guilty of any

---

[2] On 10 December 2014 we heard oral argument on the appellant's first AOE.

[3] Prosecution Exhibits 8 and 10.

[4] PE 10 at 1.

[5] *Original Record at 681, 771-80; *Appellate Exhibit LVIII.  All citations referencing the first court-martial record will be designated with an (*).

3

offense during the first instance and guilty of aggravated sexual assault and indecent act during the latter instance.[6]

At the second trial, presided over by a different military judge, CS3 FC testified that she awoke to the smell of smoke and observed the appellant sitting in a chair smoking a cigarette.[7] When she asked why he was not smoking out on the "front stoop," the appellant replied, "Oh, I'm sorry. I forgot," and she assumed that he then left the room.[8] CS3 FC testified that she next awoke to the appellant removing the comforter from her legs, moving her underwear and shorts to the side, and penetrating her vagina with his fingers.[9] She testified that the appellant licked her vagina and then unsuccessfully attempted to penetrate her vagina with his penis. CS3 FC stated that he then "continued to penetrate [her] with his fingers" and lick her vagina.[10] CS3 FC testified that the appellant masturbated while he performed these sexual acts on her.[11]

Additional facts necessary for the resolution of particular assignments of error are included below.

## II. Double Jeopardy

The appellant avers, for the first time, that the military judge's findings of "not guilty" to the words "on divers occasions" in his first court-martial led to an ambiguous verdict and, thus the rehearing was held in violation of the double jeopardy clause. Moreover, the appellant maintains that the ambiguous verdict in the first trial coupled with the double jeopardy clause violation at the rehearing precludes our Article 66, UCMJ, review of the appellant's convictions for Specifications 1 and 2 of the sole Charge.

A. *Background*

The pertinent specifications at the second trial are as follows:

---

[6] *AE LVIII.

[7] Record at 645.

[8] *Id.* at 648.

[9] *Id.*

[10] *Id.* at 653-55.

[11] *Id.* at 657

**Specification 1:** In that [appellant], on active duty, did, at or near [location], on divers occasions, on or about 30 April 2011, engage in a sexual act, to wit: penetration of the genital opening with his finger of [CS3 FC], who was substantially incapable of declining participation in the sexual act.

**Specification 2:** In that [appellant], on active duty, did, at or near [location], on divers occasions, on or about 30 April 2011, wrongfully commit indecent conduct, to wit: masturbating in the presence of [CS3 FC] without the consent of the said [CS3 FC].

At the appellant's first trial, the trial defense counsel filed a motion to dismiss for multiplicity and unreasonable multiplication (UMC) of charges, arguing:

[A]ll of this conduct occurred in a short time span, at the same location, and was essentially the same act that may have occurred on "divers" occasions. The government cannot claim that these acts were related to separate instances of conduct as each charge alleges "on divers" occasions and {CS3 FC} claims each act occurred simultaneously on these divers occasions. These specifications are not aimed at separate criminal acts.[12]

The following discussion then took place on the record:

DC: . . . As far as unreasonable multiplication of charges, these charges all stem from the same incident, one intent, one course of conduct, and we believe that they're unreasonable for even this purpose of----

MJ: Well, did I mishear the evidence? I mean there seem to be at least two, if not three, different episodes in the late hours of the 29th/early hours of the 30th.

DC: Sir, but the way that the government has charged it is on divers occasions, in--indicating that those different acts are all in each one of those specifications.[13]

---

[12] *AE IV at 8.

[13] *Record at 678-80.

Later, the military judge stated:

> There is an easy way out for me, and that is simply to enter a finding of not guilty with respect to the words "on divers occasions;" I'm not sure that that gives the defense everything that it wants because it, then, has three standalone offenses on there, but it does remove any kind of Walter—Walters and Seider problem, and I think it actually fairly describes what happened on the 30th of April.[14]

The military judge then entered findings of "not guilty" to the words "on divers occasions" with respect to the pertinent charges.[15]

The military judge subsequently clarified his findings to the members:

> What I have done is I have entered a not-guilty finding with regard just to that language, "on divers occasions," which means more than once. The evidence that has come in might allow you to find [the appellant] guilty of each of those specifications on one occasion, but . . . the evidence will not allow you to find him guilty of doing those things more than once, so that's why I've entered the finding of not guilty with respect to the words "on divers occasions."[16]

After the court closed for deliberations, the military judge held an Article 39(a), UCMJ, session outside the members' presence during which he stated that when he ruled on the defense's UMC motion and removed the words "on divers occasions" from the specifications, he "actually complicated things from a Walters and Seider, what can the Court of Criminal Appeals review under an Article 66(c) standpoint because there is credible evidence . . . that there may have been two instances where [the appellant] was in the den masturbating."[17] The military judge decided to break down the alleged misconduct

---

[14] *Id.* at 680.

[15] *Id.*

[16] *Id.* at 696.

[17] *Id.* at 757.

further on the final findings worksheet, stating that "the safe course of action here which will best preserve the appellate record . . . is to break down all of the offenses alleged in the Charge."[18]  The military judge then recalled the members and instructed them on the new findings worksheet.

The final findings worksheet allowed the members to specify any guilty findings for each offense for conduct that occurred "before the cigarette," "after the cigarette," or "before and after the cigarette."[19]  The members found the appellant guilty of both the aggravated sexual assault and indecent act "after the cigarette."[20]

B. *Discussion*

The predicate legal issue in this AOE is whether the appellant's rehearing violated double jeopardy principles. The Double Jeopardy Clause of the U.S. Constitution is directed at the threat of multiple prosecutions or sentences for the same offense.  It does not matter whether the accused was acquitted or convicted of that offense in the prior trial. *United States v. Leak*, 61 M.J. 234, 242-43 (C.A.A.F. 2005).  "The underlying idea . . . is that the State . . . should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . . ."  *Green v. United States*, 355 U.S. 184, 187-88 (1957).

This concept is also applied to military personnel through Article 44(a), UCMJ, which provides: "No person may, without his consent, be tried a second time for the same offense."  RULE FOR COURTS-MARTIAL 907(b)(2)(C), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) also provides: "A charge or specification shall be dismissed upon motion made by the accused before the final adjournment of the court-martial in that case if . . . [t]he accused has previously been tried by court-martial . . . for the same offense . . . ."  "However, these rights may be waived, since RCM 907(b)(2) is designated as '[w]aivable grounds.'" *United States v. Collins*, 41 M.J. 428, 429 (C.A.A.F. 1995).

---

[18] \**Id.* at 781.

[19] \*AE LVIII

[20] \**Id.*

Waiver is the "intentional relinquishment or abandonment of a known right," which precludes appellate review of an issue; forfeiture is "the failure to make the timely assertion of a right" leading to plain error review on appeal. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (internal quotation marks omitted). The record reveals no indication that the appellant ever knowingly, voluntarily, and intelligently waived a double jeopardy claim. However, at his rehearing, the appellant failed to raise a former jeopardy claim based on the military judge's finding of not guilty to the words "on divers occasions" at his first court-martial.[21]

Our superior court has recognized a "general rule" that, absent "unusual circumstances," "a claim of former jeopardy must be raised before the conclusion of the trial or it is waived." *United States v. Schilling*, 22 C.M.R. 272, 273 (C.M.A. 1957) (citation omitted); *see also Unites States v. Britton,* 47 M.J. 195, 198 (C.A.A.F. 1997) ("Double jeopardy claims are waived if not raised at trial.") (citations omitted), *overruled on other grounds* by *United States v. Miller*, 67 M.J. 385, 389 (C.A.A.F. 2009); *United States v. Lloyd,* 46 M.J. 19, 21 (C.A.A.F. 1997) (finding "constitutional and statutory protections against double jeopardy may be waived passively, i.e., forfeited by failure to make a timely objection") (citations omitted). Other courts have similarly found waiver or forfeiture when a defendant failed to raise a double jeopardy claim. *See United States v. Lewis*, 492 F.3d 1219, 1223 (11th Cir. 2007) (holding "that a defendant who simply failed to raise a double jeopardy claim before the district court, and took no affirmative steps to voluntarily relinquish the claim, forfeited that claim" and reviewed for plain error); *United States v. Whitfield*, 590 F.3d 325, 370 (5th Cir. 2009) (stating "[t]he Supreme Court has made it clear that failure to raise a double jeopardy defense in the trial court constitutes a waiver thereof") (citing *Peretz v. United States*, 501 U.S. 923 (1991)).

The appellant had full opportunity to raise an ambiguous verdict claim during his first court-martial appeal. Additionally, the appellant could have raised a double jeopardy claim, based upon an ambiguous verdict at the first court-martial, prior to his rehearing. In both instances, the appellant failed to make such an assertion. Applying the court's rationale in *Lloyd* and *Lewis*, and recognizing the

---

[21] We also note that the appellant failed to raise such a claim in his appeal of the first court-martial.

appellant did not affirmatively waive this issue, we now test for plain error.  To show plain error, the appellant must persuade this court that: "'(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'"  *United States v. Tunstall*, 72 M.J. 191, 193-94 (C.A.A.F. 2013) (quoting *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011)).

We find no plain error in this case.  At the appellant's first court-martial, the military judge found the appellant "not guilty" of the words "on divers occasions" for three specifications while considering the defense motion alleging multiplicity and an unreasonable multiplication of charges.  The judge then advised the members that the appellant could only be found guilty of violating each specification on "one occasion." While not speculating on the military judge's motivation to address the defense's multiplicity/UMC contention in this unusual fashion, we do note that the alleged conduct took place on the same date, over a matter of hours, with arguably the same continuing intent.  *See* R.C.M. 307(c)(4) ("What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."); *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001).  The members' findings specifically evince that they found the appellant guilty of a single aggravated sexual assault and a single act of indecent conduct, both occurring "after the cigarette."[22]  Given these circumstances, we are convinced that the military judge at the appellant's rehearing did not plainly err in failing to *sua sponte* conclude that the findings from the appellant's first court-martial, findings which we set aside on other grounds, were ambiguous and therefore the rehearing violated double jeopardy prohibitions.

C. *Alleged Ambiguous Findings at the Rehearing*

The appellant further alleges on appeal that there were two occasions of potential aggravated sexual assault and indecent conduct committed "after the cigarette": (1) before the appellant attempted penile penetration, and (2) after the attempted penile penetration.  He thus argues that since the members found him guilty of conduct "after the cigarette," their verdict is ambiguous because there were two separate occasions of aggravated sexual assault and indecent conduct "after the cigarette."

---

[22] *AE LVIII.

However, we find these episodes were a part of the same ongoing sexual offenses charged in the specifications under the charge. The testimony adduced at trial showed the appellant engaged in one continuing course of conduct after the cigarette, despite his alleged penetration attempt.[23]

### III. Challenge for Cause

The appellant next argues that the military judge abused his discretion by denying the defense challenge for cause against LT S.

During *voir dire*, LT S disclosed he was raped by a 14-year-old boy when he was 4 years old.[24] He stated that his prior childhood experiences would not impact his ability to be a fair and impartial member in the case, even if any evidence presented involved child sexual abuse.[25]

He also stated he thought "consuming alcohol to the point of intoxication . . . removes your ability to consent" and that someone legally unable to operate a motor vehicle would be legally incapable of consenting to a sexual act.[26] Upon further questioning by trial defense counsel, LT S clarified that he believed whether someone's having sexual intercourse with an intoxicated person was a crime "would entirely depend on all the facts" and "[t]he simple acts of sex occurring between two people that have been drinking, perhaps to the point of intoxication, no, I don't think that that in and of itself makes it a crime."[27] He later said that he stood by his clarifying answer.[28] Finally, he spoke about his father's physical abuse of his mother and his wife's physical abuse by a former husband.[29]

---

[23] The appellant was acquitted of the alleged penile penetration at his original trial.

[24] Record at 479.

[25] *Id.* at 484.

[26] *Id.* at 480-81.

[27] *Id.* at 481.

[28] *Id.* at 483.

[29] *Id.* at 476, 478. With regard to his father's domestic abuse, LT S stated it happened at least 27 years earlier, that his parents divorced when he was four and that his father has been sober for more than 20 years. LT S also stated that he maintains a good relationship with both his parents.

The defense challenged LT S for cause, citing implied bias based solely on LT S being a prior victim of a sexual assault.[30] Referencing the liberal grant mandate and finding no implied bias, the military judge denied the defense's challenge of LT S.[31]

The military judge found LT S was "completely candid and forthright," could not remember many details regarding the sexual assault when he was four years old, had received therapy, did not participate in the assailant's trial, stated he "harbor[ed] no resentment," and "said that period of his life has passed."[32] The military judge further found that the mere fact that an assault was part of his history "in and of itself does not give me pause for concern or an ability to find implied bias, particularly given [LT S's] candor and demeanor before the court."[33]

A court member must be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912(f)(1)(N). "R.C.M. 912 encompasses challenges based upon both actual bias and implied bias." *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008) (citations omitted).

The standard of review for implied bias is "less deferential than abuse of discretion, but more deferential than *de novo* review." *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006). However, military judges who place their reasoning on the record and consider the liberal grant mandate will receive more deference on review. *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007). Here, the military judge recognized and applied the liberal grant mandate and articulated his analysis on the record, and his ruling will therefore be given greater deference.

---

Regarding his wife's former abusive relationship, LT S said that his wife did not harbor "any kind of lingering victim mentality."

[30] *Id.* at 586.

[31] *Id.* at 587-88. The military judge granted two of four challenges for cause by the trial defense counsel.

[32] *Id.*

[33] *Id.* at 588.

11

The test for implied bias is objective. Viewing the situation through the eyes of the public and focusing on the perception of fairness in the military justice system, we ask whether there is too high a risk that the public will perceive that the accused received less than a court composed of fair and impartial members. *United States v. Wiesen,* 56 M.J. 172, 176 (C.A.A.F. 2001). Notwithstanding a member's disclaimer of bias, there is implied bias when "most people in the same position would be prejudiced." *United States v. Napolitano*, 53 M.J. 162, 167 (C.A.A.F. 2000) (citation and internal quotation marks omitted). "Challenges for actual or implied bias are evaluated based on a totality of the circumstances." *United States v. Richardson*, 61 M.J. 113, 118 (C.A.A.F. 2005) (citing *United States v. Strand*, 59 M.J. 455, 459 (C.A.A.F. 2004)).

"There is no per se rule that a panel member must be excused because he or she has been the victim of a similar crime." *United States v. Castillo,* 74 M.J. 39, *7 (C.A.A.F. 2015) (citing *United States v. Smart*, 21 M.J. 15, 19 (C.M.A. 1985)). A panel member's experience as a victim of a crime similar in theme or close in time to the charged offense may, in some cases, present an issue of implied bias. *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996). Here, we find no such issue.

LT S unequivocally stated that his prior childhood experiences would not impact his ability to be a fair and impartial member in the case, even if any evidence presented involved child sexual abuse.[34] Regarding his prior sexual assault, he candidly said, "Looking back on it, he was a 14-year-old boy with raging hormones. . . . I've had a lot of time to kind of deal with it and get over it . . . I don't harbor any kind of resentment or anger. It's a period of my life, though, that just happened."[35]

We conclude that, viewed objectively, a member of the public would not question the fairness of LT S sitting as a panel member. Considering the totality of the circumstances, we find that the public would perceive this panel to be fair and impartial and conclude that the military judge did not err in denying the defense's challenge against LT S based on implied bias.

---

[34] *Id.* at 484.

[35] *Id.* at 480.

12

# IV. Unlawful Command Influence

We address the appellant's third and fourth AOEs concerning unlawful command influence (UCI) together. The appellant's third AOE avers that the military judge abused his discretion by failing to declare a mistrial after a witness changed portions of his testimony from the first court-martial. The witness revealed that his commanding officer and senior enlisted leader counseled him following his favorable testimony for the appellant. The appellant's fourth AOE states the military judge erred in finding no apparent UCI when the Navy's most senior leaders have widely publicized their preferred outcomes for sexual assault cases.

A. *Law*

The defense has the burden of raising the issue of UCI. *United States v. Reed*, 65 M.J. 487, 488 (C.A.A.F. 2008) (citing *United States v. Biagase,* 50 M.J. 143, 150 (C.A.A.F. 1999)). On appeal, the defense must present "some evidence" of unlawful command influence, showing (1) "facts which, if true, constitute unlawful command influence," (2) "the proceedings were unfair," and (3) "unlawful command influence was the cause of the unfairness." *Biagase*, 50 M.J. at 150 (citations and internal quotation marks omitted). "[O]nce the issue of unlawful command influence is raised, the Government must prove beyond a reasonable doubt: (1) that the predicate facts do not exist; or (2) that the facts do not constitute unlawful command influence; or (3) that the unlawful command influence did not affect the findings and sentence." *Id.* at 151.

"Where the issue of unlawful command influence is litigated on the record, the military judge's findings of fact are reviewed under a clearly-erroneous standard, but the question of command influence flowing from those facts is a question of law that [the] Court reviews *de novo*." *Reed*, 65 M.J. at 488 (C.A.A.F. 2008) (quoting *United States v. Wallace,* 39 M.J. 284, 286 (C.M.A. 1994)). The military judge's remedies for unlawful command influence are reviewed for an abuse of discretion. *United States v. Douglas,* 68 M.J. 349, 354 (C.A.A.F. 2010).

We look favorably upon a military judge's "proactive, curative steps to remove the taint of unlawful command influence and ensure a fair trial." *Id.* (citation omitted). Dismissal "is a drastic remedy and courts must look to see whether alternative remedies are available." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citations omitted). "When an

error can be rendered harmless, dismissal is not an appropriate remedy." *Id.* (citation omitted).

B. *Chief F's Testimony*

Chief F testified as a defense witness on the merits and on sentencing in both of the appellant's trials. In both trials, Chief F presented good military character evidence on the merits.[36] In sentencing at the appellant's rehearing, Chief F stated he would work with the appellant "any day" "[o]utside of the Navy"[37]; whereas, in the appellant's original trial, Chief F testified that he would work with the appellant again in the Navy "in a heartbeat."[38]

Chief F testified that his sentencing testimony had changed because Chief F's senior enlisted leader and commanding officer counseled him shortly after his testimony in the appellant's first trial that "a convicted sex offender is not in the value of the U.S. Navy" and he was an "inexperienced chief" for testifying otherwise.[39] Chief F further testified that he believed his career would be negatively impacted if he had not changed his testimony at the rehearing.[40] Trial defense counsel raised a UCI motion at that time and requested dismissal of the charges with prejudice.[41]

The military judge, finding "no indication that [Chief F's] command . . . had any idea that he was going to testify again," found no actual UCI, but held there was apparent UCI.[42] Additionally, the military judge found there was no "evidence it affected the merits."[43] The military judge determined that an appropriate remedy could be crafted since Chief F had testified

---

[36] *Record at 660–67. Record at 1039–53.

[37] Record at 1178.

[38] *Record at 820–22.

[39] Record at 1191–93. The appellant's father, a retired master chief petty officer, had contacted the appellant's command and about Chief F's support for the appellant.

[40] *Id.* at 1196.

[41] *Id.* at 1207.

[42] *Id.* at 1212–13.

[43] *Id.* at 1213.

previously.[44]  He gave the defense two options: put Chief F back on the witness stand to supplement his prior testimony or give the members a transcript of his prior testimony and an appropriate instruction.[45]  The defense chose the latter option.[46] Prior to the sentencing arguments, the military judge instructed the members:

> At the previous trial, Chief [F], who testified on behalf of [the appellant], he testified at the first trial, as well as testifying here.  After his testimony here, the court learned his previous testimony at the first trial had been even more supportive than it was here at this trial.  The court also learned that . . . after his testimony at the first trial, he was counseled by senior leadership at his command for being too supportive.  That is beyond inappropriate.  That is what we call unlawful command influence, and how or if that behavior is dealt with externally is beyond our purview.
>
> What is within our purview, however, is the mandate that Petty Officer Oakley receive an absolutely fair trial and sentencing hearing, so to that end, I am going to provide each of you with a copy of Chief [F]'s prior testimony from the last trial, and I'm going to direct that each of you read it prior to beginning any deliberations today on a fair sentence.  You will take that back with you.
>
> Do you all understand that and agree that you will read that in its entirety before beginning any discussions or deliberations on sentence?  If that's accurate, please raise your right hand.[47]

The members responded in the affirmative.[48]

In his sentencing instructions, the military judge stated:

---

[44] *Id.*

[45] *Id.* at 1213.

[46] *Id.* at 1215.

[47] *Id.* at 1225

[48] *Id.*

15

. . . but for conduct that constituted unlawful command influence, a defense witness would have provided more favorable testimony during presentencing proceedings, specifically testimony that the accused should be retained in the Navy. You should consider the witness' testimony, Chief [F], that the accused be retained in the Navy during your sentencing deliberations.

Additionally, you may infer that the United States, represented in this court-martial by the prosecution, is responsible for that unlawful command influence. As I told you at the outset of the court-martial, no person may unlawfully influence this proceeding or any other military-justice proceeding. In reaching your sentence in this case, you may, in your discretion, provide the accused relief in the form of a less-severe sentence because of this unlawful command influence.[49]

Chief F's prior testimony was marked as an appellate exhibit and given to the members to consider during sentencing.[50]

Here, the military judge appropriately found apparent UCI as it related to Chief F's testimony during presentencing proceedings. Like the military judge, we find no evidence on the record that Chief F's testimony on the merits was impacted by UCI.[51] As such, the military judge crafted an appropriate remedy of providing the members with Chief F's prior testimony, attributing the UCI to the Government, and telling the members they could grant relief in sentencing as a result.

The defense asks us to compare this case to that of *United States v. Gore*, 60 M.J. 178 (C.A.A.F. 2004), where a commanding officer prevented a chief from testifying and other potential defense witnesses from providing good character evidence on behalf of Gore at his pending court-martial, thus justifying a full dismissal of the charges against the appellant. However, *Gore* is inapposite. Unlike in that case, Chief F was not prevented from testifying and still testified very positively on

---

[49] *Id*. at 1245-46.

[50] AE LXXXVI.

[51] The trial defense counsel conceded there was no evidence of UCI concerning Chief F on the merits. Record at 1207.

the appellant's behalf as he had at the first court-martial. Moreover, the military judge provided a transcript of Chief F's testimony from the original court-martial and highlighted the changes in his testimony to the members while clearly instructing them as to how they must view that change in testimony. Accordingly, under the circumstances of this case, we conclude that the military judge did not abuse his discretion in the remedies he provided the appellant.

C. *Statements from Military Leaders*

Prior to trial, the trial defense counsel argued a UCI motion which focused on the media attention surrounding comments made by military leaders concerning sexual assault.[52] The military judge found the defense presented "some evidence" of unlawful command influence due to the "significant and vocal attention" surrounding sexual assaults in the military context.[53] However, the military judge did not find either actual or apparent UCI because the "prevailing theme of the comments is to remind subordinate leaders of the importance of holding their subordinates appropriately accountable for their actions."[54] At trial, the military judge allowed liberal *voir dire* and read the memorandum from the Secretary of Defense dated August 6, 2013 to the members.[55]

With regard to senior military leaders' comments on sexual assault cases in the military context, the defense failed to present any evidence creating a nexus between the appellant's trial and those statements. Upon the military judge's questioning, all of the members affirmatively responded when asked whether they could consider the full range of punishments, including no punishment.[56] Assuming *arguendo* the defense presented enough evidence to shift the burden to the Government, the military judge's curative actions of liberal *voir dire* and reading the Secretary of Defense's memorandum were adequate and appropriate.

---

[52] AE XI.

[53] AE LV at 4.

[54] *Id.* at 4-5.

[55] Record at 404-06.

[56] *Id.* at 420.

We hold that the Government has met its burden of demonstrating beyond a reasonable doubt that the fairness of the court-martial proceedings was not compromised by UCI. *See United States v. Simpson*, 58 M.J. 368, 376 (C.A.A.F. 2003).

## V. Motion to Suppress the Appellant's NCIS Statements

The appellant's fifth AOE avers that the military judge erred in admitting the appellant's statements to NCIS because the NCIS agent failed to adequately inform the appellant of the allegations against him before the appellant waived his Article 31(b), UCMJ, rights. We hold that the military judge did not abuse his discretion in admitting the appellant's NCIS statements.

During the appellant's NCIS interrogation, Special Agent (SA) Y asked the appellant if he knew why he was there.[57] The appellant responded that he did not. SA Y then stated that an event took place at his father's house that was subsequently reported.[58] When the appellant still seemed confused, SA Y presented him with an Article 31(b) waiver identifying the suspected crime as "indecent assault" under Article 134, UCMJ.[59] The appellant replied that he understood what indecent assault was.[60] SA Y further stated that an incident occurred between the appellant and his stepsister at a family gathering on April 29.[61] The appellant asked, "What happened?"[62] SA Y replied, "Would you like to talk to us?"[63] The appellant then said he wanted to know what was "going on" and agreed to waive his rights. Shortly thereafter, SA Y said they had information that he may have had a "sexual interaction with [his] stepsister."[64]

The trial defense counsel moved to suppress the appellant's statements made after this rights waiver. The military judge denied this motion, finding the appellant understood the rights

---

[57] PE 6 at 08:35.

[58] *Id.* at 08:36.

[59] PE 7.

[60] PE 6 at 08:37.

[61] *Id.* at 8:38.

[62] *Id.*

[63] *Id.*

[64] *Id.* at 08:40.

advisement.[65]  The military judge also found the advisement of "indecent assault," although outdated at the time of the interview, was adequate to identify "an offensive touching of a sexual nature."[66]  He further found that SA Y "was not trying to avoid the sexual nature of the suspected offense," but "simply failed in her attempt to use the most precise UCMJ article to describe the allegation.[67]

A military judge's ruling on a motion to suppress is reviewed for an abuse of discretion.  *United States v. Young*, 49 M.J. 265, 266-67 (C.A.A.F. 1998).  However, we review whether a rights advisement is consistent with applicable rights warning requirements *de novo*.  *United States v. Simpson*, 54 M.J. 281, 284 (C.A.A.F. 2000).  A suspect does not have to be advised of every possible charge under investigation or the most serious or any lesser-included charges being investigated.  *Id.*  "Nevertheless, the accused or suspect must be informed of the general nature of the allegation, to include the area of suspicion that focuses the person toward the circumstances surrounding the event."  *Id.* (citations omitted).

In this case, SA Y verbally warned the appellant that he was being questioned about indecent assault on his stepsister at a family gathering on 29 April 2011.  The charged crimes concerned a continuous sequence of indecent acts within a day of the date supplied by the warnings.  *See id.* (finding factors of adequate rights' warnings include "whether the conduct is part of a continuous sequence of events" and "within the frame of reference supplied by the warnings") (citations omitted)).  Under the circumstances, we find that the Article 31(b) warnings sufficiently oriented the appellant to the nature of the accusations against him and that the military judge did not abuse his discretion in denying the defense motion to suppress.  *See id.*

## VI. Evidence of Similar Crimes

The appellant next argues the military judge erred by admitting evidence that the appellant previously sexually assaulted CS3 FC when they were both children.  He states that this evidence lacks relevance to a fact in issue, or, if

---

[65] AE LIV.

[66] *Id.* at 5.

[67] *Id.* at 5-6.

relevant, any probative value was far outweighed by unfair prejudice.

At trial, the military judge allowed CS3 FC's testimony that, when she was ten years old and the appellant was twelve, she awoke in the middle of the night to the appellant lying on top of her, her shorts pulled to the side, and the appellant trying to penetrate her vagina with his penis.[68]  Speaking of the same incident, the appellant told NCIS that he was sleepwalking and awoke to find himself with his pants off and on top of CS3 FC while she was in bed.[69]  The military judge admitted this evidence under MILITARY RULES OF EVIDENCE 404(b) and 413, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), finding the evidence showed a specific sexual intent, an ongoing sexual interest in CS3 FC, and that the appellant did not mistake her identity at the time of the sexual behavior on 30 April 2011.[70]

We review "a military judge's decision to admit evidence for an abuse of discretion."  *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citing *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010)).  "'The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion.  The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'"  *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

MIL. R. EVID. 413(a) provides, "In a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant."  "[I]nherent in M.R.E. 413 is a general presumption in favor of admission."  *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005) (citation omitted).

The "three threshold requirements for admitting evidence of similar offenses in sexual assault cases under M.R.E. 413 [include]: (1) the accused must be charged with an offense of sexual assault; (2) the proffered evidence must be evidence of the accused's commission of another offense of sexual assault; and (3) the evidence must be relevant under M.R.E. 401 and

---

[68] Record at 652.

[69] PE 6 at 08:56.

[70] AE XXXVIII.

M.R.E. 402." *Solomon*, 72 M.J. at 179 (citations omitted). In order to meet the second requirement, the military judge must conclude that the members "could find by a preponderance of the evidence that the offenses occurred." *United States v. Wright*, 53 M.J. 476, 483 (C.A.A.F. 2000) (citing *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988)).

Once the threshold requirements are met, "the military judge is constitutionally required to also apply a balancing test under M.R.E. 403." *Solomon*, 72 M.J. at 179-80 (citing Berry, 61 M.J. at 95). In conducting the MIL. R. EVID. 403 balancing test, "the military judge should consider the following non-exhaustive factors":

> strength of proof of the prior act (i.e., conviction versus gossip); probative weight of the evidence; potential for less prejudicial evidence; distraction of the factfinder; time needed for proof of the prior conduct; temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and the relationship between the parties.

*Id.* at 180 (citation omitted). "When a military judge articulates his properly conducted M.R.E. 403 balancing test on the record, the decision will not be overturned absent a clear abuse of discretion." *Id.* (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

In this case, the appellant was charged with aggravated sexual assault. The Government proffered evidence of the appellant's commission of another offense of sexual assault, specifically attempted aggravated sexual contact or assault.[71] The military judge found that, considering the expected testimony of CS3 FC and the appellant's admissions concerning the incident, there was sufficient evidence to meet the required preponderance standard.[72] The military judge properly performed a MIL. R. EVID. 403 analysis, considering the nine non-exhaustive factors outlined above.[73]

CS3 FC's testimony along with the appellant's admission is strong evidence of the prior act. Although the appellant told

---

[71] AE VII, Enclosure (A).

[72] AE XXXVIII.

[73] *Id.*

21

NCIS that he was sleepwalking at the time, the members could find by a preponderance of the evidence that the appellant intentionally committed those acts.  In addition, the evidence is highly probative.  The prior alleged offense and its setting was strikingly similar to those of the charged offense, where CS3 FC testified that the appellant moved her shorts and underwear to the side and penetrated her vagina with his fingers and tongue while CS3 FC was sleeping.  In fact, both sexual assaults involved FC sleeping at the time of the assault, the appellant moving her underwear and shorts to expose her vagina, and the appellant attempting, or succeeding, to penetrate her vagina.  The persons involved and their step-sibling relationship remained the same on both occasions, despite their age difference.

The two factors that favor exclusion included the ten-year gap between the events and the lack of frequency of the prior actions.  However, the other factors weighed substantially in favor of admission of the prior act.

The military judge found there was no less prejudicial evidence of the appellant's sexual interest in CS3 FC.  He considered the less prejudicial evidence of CS3 FC's testimony that the appellant would frequently look into her bedroom window; however, the military judge found there was "no reasonable inference those acts, by themselves, were motivated by a sexual interest" in CS3 FC.[74]

The length of time necessary to present these issues was minimal because the evidence was presented through CS3 FC, who was already testifying, and the appellant's NCIS statement.  No other witnesses needed to be presented.  The potential for distraction was low because the fact finder had to consider the appellant's specific sexual intent as part of the charged offense.  Finally, the military judge properly instructed the members with regard to the use of this evidence.[75]

The appellant, citing *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004), argues that, since there was no evidence of the appellant's mental and emotional state at the time of the prior act, the court could not make a "meaningful comparison" with the appellant's state of mind on the date of the charged sexual assault.  However, *McDonald*, addresses

---

[74] *Id.* at 8.

[75] Record at 1087-88.

whether uncharged acts the appellant allegedly committed over twenty years prior to trial when he was a child upon a person who was not the charged victim were admissible under Mɪʟ. R. Eᴠɪᴅ. 404(b). 59 M.J. at 427. There, the Court of Appeals for the Armed Forces found that the evidence of the appellant molesting his stepsister, who was eight, when he was thirteen, was not admissible under Mɪʟ. R. Eᴠɪᴅ. 404(b) because there was no evidence that the appellant's intent to molest his twelve-year-old adopted daughter when he was an adult was similar. *Id.* at 430. Therefore, this case, concerning the same victim and a similar sexual assault, is notably distinguishable from *McDonald*.

Accordingly, we find the military judge did not abuse his discretion in admitting this evidence under Mɪʟ. R. Eᴠɪᴅ. 413.[76]

## VII. Inconsistent Verdict

At the appellant's rehearing, the military judge denied a defense motion to dismiss Specification 1 of the Charge due to issue preclusion and double jeopardy.[77] The appellant's final AOE avers that the military judge erred in this denial.

The Double Jeopardy Clause of the Constitution forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. Consequently, a finding of insufficiency of evidence by either the trial court or an appellate court will bar a second trial on the issue. However, the Double Jeopardy Clause does not preclude retrial when a conviction is set aside because of procedural error in the proceedings leading to the conviction as occurred with the appellant's original trial. *See Burks v. United States,* 437 U.S. 1, 14 (1978); *United States v. Scott,* 437 U.S. 82, 90-91 (1978), and *United States v. Tateo,* 377 U.S. 463, 465 (1964). Additionally, Article 66(d), UCMJ, provides statutory authority for our Court to order a rehearing in such circumstances.[78]

---

[76] Because we hold the military judge did not abuse his discretion in admitting this conduct under Mɪʟ. R. Eᴠɪᴅ. 413, we need not address whether this conduct is admissible under Mɪʟ. R. Eᴠɪᴅ. 404(b). *See Berry,* 61 M.J. at 95; *United States v. Bare,* 65 M.J. 35, 37-38 (C.A.A.F. 2007).

[77] AE III and Record at 220.

[78] "If the Court of Criminal Appeals sets aside the findings and sentence, it may, except where the setting aside is based on lack of sufficient evidence in the record to support the findings, order a rehearing." Art. 66(d), UCMJ.

Here, we set aside the findings and sentence of the appellant's original trial due to instructional error. *Oakley*, 2013 CCA LEXIS 245. We also authorized a rehearing. *Id.* at *26-27.

At the appellant's rehearing, he was tried for and convicted of aggravated sexual assault and committing an indecent act, the identical offenses for which he was convicted at his original trial. However, at his original trial the appellant was also charged with, but acquitted of, wrongful sexual contact.[79] In this AOE, the appellant asserts that his original conviction for aggravated sexual assault was inconsistent with his acquittal of wrongful sexual contact, and therefore precluded retrial for aggravated sexual assault. We disagree.

Throughout the appellant's original trial the wrongful sexual contact specification was treated as a separate and non-lesser included offense of the aggravated sexual assault specification. The act alleged in the aggravated sexual assault specification was that the appellant penetrated CS3 FC's "genital opening with his finger" while CS3 FC was "substantially incapable of declining participation in the sexual act." The military judge instructed the members as follows:

> For this offense, the term "sexual act" means the penetration, however slight, of the genital opening of another by a hand or finger, or by any object, with an intent to abuse, humiliate, harass or degrade any person, or to arouse or gratify the sexual desire of any person.
> . . . .
> The genital opening is the entrance to the vagina, which is the canal that connects the genital opening to the uterus.[80]

The act alleged in the wrongful sexual contact specification was that the appellant touched CS3 FC's

---

[79] The specification reads as follows: "In that [the appellant], U.S. Navy, USS INGRAHAM, on active duty, did at [location], on divers occasions, on or about 30 April 2011, engage in sexual contact with [CS3 FC], to wit: touching her groin, and such sexual contact was without legal justification or lawful authorization and without the permission of [CS3 FC]."

[80] *Record at 733-34.

24

groin.  The military judge instructed the members as
follows:

> For this offense, the term "sexual contact" means the
> intentional touching, either directly or through the
> clothing, of the genitalia, anus, groin, breast, inner
> thigh or buttocks of another person with an intent to
> abuse, humiliate or degrade any person, or to arouse
> or gratify the sexual desire of any person.[81]

The military judge gave no definition of the word "groin."

The trial defense counsel did not object to the military
judge's instructions on these offenses, or to the findings
worksheet that permitted the members to convict for both
offenses.  In short, we find these to be separate offenses and
therefore conclude the appellant's conviction for aggravated
sexual assault was not inconsistent with his acquittal for
wrongful sexual contact.

Assuming *arguendo* that the member's rendered an
inconsistent verdict in the appellant's first court-martial,
"[a]n inconsistent verdict is not usually a cause for relief
. . . [t]he reason for the rule is that the court-martial may
merely have given the accused 'a break.'"  *United States v.
Wilson*, 13 M.J. 247, 251 n.4 (C.M.A. 1982) (citations omitted).

Our court set aside the findings and sentence from the
appellant's first court-martial due to instructional error and
authorized a rehearing.  The Government retried the appellant
solely on the offenses for which he was convicted at his
original court-martial.  The appellant cites to no relevant
authority that prohibited his rehearing in these circumstances.
Accordingly, we decline to grant the appellant relief on this
AOE.

### VIII. Court-Martial Order

Although not raised as an AOE, the promulgating order in
this case does not accurately list Specification 1 under the
sole Charge of which the appellant was convicted.  General
Court-Martial Order No. 01-14 dated 9 Jan 2014.  As to
Specification 1 of the Charge, the appellant was formerly
acquitted of the words "on divers occasions" by the original
military judge.  However, the Order states that the appellant

---

[81] *Id.* at 734.

was convicted of aggravated sexual assault "on divers occasions."

We test this error under a harmless-error standard. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998). We are convinced that this scrivener's error did not amount to plain error materially prejudicing the appellant's substantial rights because no prejudice was alleged or is apparent. *See id.* However, the appellant is entitled to have his official record correctly reflect the results of his court-martial. *See id.* We therefore order corrective action in our decretal paragraph.

## IX. Conclusion

Accordingly, we direct that the supplemental court-martial order remove the words "on divers occasions" from Specification 1 of the sole Charge. The findings and the sentence as otherwise approved by the CA are affirmed.

Chief Judge MITCHELL and Judge McDONALD concur.

For the Court


R.H. TROIDL
Clerk of Court